UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE *et al*, Individually and a Next
Friend of JD, a minor,

     Plaintiff,

v.

ROCHELLE TERRY,

     Defendant.

_____ /

Case No. 23-10028

F. Kay Behm
United States District Judge

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 11)**

This case is before the court on Defendant Rochelle Terry's motion to

dismiss Plaintiff Jane Doe's first amended complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  (ECF No. 11).  Plaintiff, on behalf of herself and her

minor daughter ("Julie Doe"), filed her initial complaint on January 5, 2023.  (ECF

No. 1).  On March 15, 2023, Defendant filed a motion to dismiss for failure to

state a claim.  (ECF No. 7).  On March 16, 2023, the court entered an order giving

Plaintiff the opportunity to file an amended complaint pursuant to Fed. R. Civ. P.

15(a)(2).  (ECF No. 8).  Plaintiff filed her first amended complaint on April 4, 2023

and, as such, the court denied Defendant's motion to dismiss as moot.  (ECF No.

9, 10).  Plaintiff's first amended complaint argues Defendant violated her rights

under the Fourteenth Amendment (Count I) and was grossly negligent under Michigan law (Count II) in contacting Plaintiff's abuser and "providing him with Plaintiff's telephone number and new name" which "created or increased the risk that Plaintiff and her daughter would be subjected to violence." (ECF No. 1, PageID.210).

On April 7, 2023, Defendant filed the present motion to dismiss Plaintiff's first amended complaint. (ECF No. 11). Her motion has now been fully briefed, and the court held a hearing on November 8, 2023. (*See* ECF Nos. 12, 13, 14). For the reasons stated below, the court **DENIES** Defendant's motion.

## I.   FACTUAL BACKGROUND

Many of the allegations in this case involve a third party, Ghassan Sardy, who Plaintiff alleges was physically violent toward her and sexually violent toward her minor daughter, Julie Doe. (ECF No. 9, PageID.206). Notably, Plaintiff alleges that Sardy once told her "[i]f I could kill you and get away with it, I would kill you." *Id.* On October 4, 2013, Sardy was convicted by a jury of child sexually abusive activity (CSAA), using a computer to commit a crime, and two counts of criminal sexual conduct second degree (CSC 2nd) in which Julie Doe was the victim. (ECF No. 11, PageID.218). Sardy was initially sentenced to concurrent prison terms of 71 months to 20 years on the CSAA and computer charges, and 71 months to 15

2

years on the CSC 2nd charges.  *Id.*, PageID.218-19.  However, his convictions for

CSC 2nd were later reversed and he was resentenced to two concurrent prison

terms of 65 months to 20 years on the CSAA and computer charges.  *Id.*,

PageID.219; *see also People v. Sardy*, 318 Mich. App. 558 (2017).  Following

Sardy's convictions, Plaintiff and Julie Doe changed their identities and moved out

of state.  (ECF No. 9, PageID.207).  On August 17, 2014, Sardy's parental rights

over Julie Doe were terminated by the Oakland County Family Court after the

Judge found "[t]here is no question that there would be a substantial risk of harm

to the minor child if [Sardy's] rights were not terminated."  *Id.*

Sardy was granted parole on February 18, 2021, on the condition that he

would have no contact with Plaintiff or Julie Doe.  (ECF No. 11, PageID.219).  Sardy

was also placed on global positioning system (GPS) tether.  *Id.*  Defendant, a

Parole Officer with the Michigan Department of Corrections, was assigned as

Sardy's parole officer.  (ECF No. 9, PageID.208).  Plaintiff alleges that Defendant

was "familiar with Sardy's file, including the sordid reasons for Sardy's criminal

conviction, that his parental rights had been terminated, and that he was to have

no contact with Jane Doe or her minor daughter."  *Id.*

In February 2021, Plaintiff contacted Defendant to warn her that Sardy was

allegedly not attending his mandatory sex offender treatment program.  *Id.*

Plaintiff also told Defendant she was concerned Sardy would leave the state to attend a funeral.  *Id.*  Defendant allegedly asked for Plaintiff's contact information, along with a "detailed description of the facts and circumstances leading to Sardy's conviction and loss of parental rights, as well as his threatening behavior toward Plaintiff[]."  *Id.*  Plaintiff alleges she told Defendant that she wanted no contact with Sardy, and claims Defendant told her she would keep her information protected.  *Id.*  Plaintiff again contacted Defendant in June 2021 to report that she was concerned about her safety and left a voicemail message detailing the relevant facts and circumstances.  *Id.*  When Defendant returned Plaintiff's call, she allegedly asked, "who is this again?" and told Plaintiff she had contacted Sardy to ask if he knew Plaintiff, gave him Plaintiff's telephone number, and disclosed the state in which she was living.  *Id.*  Plaintiff argues these actions "created or increased the risk that [she] and her daughter would be subjected to violence by Sardy."  *Id.*, PageID.210.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz*

*v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must

provide "'a short and plain statement of the claim showing that the pleader is

entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is

and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the

complaint must "contain[] sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677

(2009).  A claim has "facial plausibility" when the nonmoving party pleads facts

that "allow[] the court to draw the reasonable inference that the [moving party] is

liable for the misconduct alleged."  *Id*. at 678.  The factual allegations "must do

more than create speculation or suspicion of a legally cognizable cause of action;

they must show entitlement to relief."  *League of United Latin Am. Citizens*, 500

F.3d at 527.

In evaluating the allegations in the complaint, the court must be mindful of

its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At

the motion to dismiss stage, the court does not consider whether the factual

allegations are probably true; instead a court must accept the factual allegations

as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed

"on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

## III.   ANALYSIS

Defendant's motion to dismiss argues that Plaintiff's state-created-danger claim should be dismissed because it both seeks to hold Defendant accountable for actions that directly caused Plaintiff's injury and fails to show Defendant was deliberately indifferent.  (ECF No. 11, PageID.224).  Defendant also argues that Plaintiff fails to allege proximate causation sufficient to state a claim for gross negligence under Michigan law.  *Id.*  Finally, Defendant argues that she is entitled to qualified immunity.  *Id.*  The court will address each of these claims in turn.[1]

---

[1] Defendant's motion to dismiss also argues, as an initial matter, that the court can consider the various items submitted as exhibits without converting this to a motion for summary judgment.  (ECF No. 11, PageID.234 n.4).  The various exhibits referred to in Defendant's motion appear to have been submitted only as exhibits to her initial motion to

A.    <u>State-Created-Danger Claim (Count I)</u>

Plaintiff first brings a claim under 42 U.S.C. § 1983, claiming Defendant's actions violated her Fourteenth Amendment "right to personal security and emotional integrity and well-being" and right "not to be deprived of due process." (ECF No. 9, PageID.210).  Section 1983 generally imposes civil liability on a person "acting under color of state law who deprives another of the 'rights, privileges, or immunities secured by the Constitution and laws.'"  *Nelson v. City of Madison Heights*, 845 F.3d 695, 699 (6th Cir. 2017) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1060 (6th Cir. 1998)).  While the state generally does not have an affirmative duty to protect its citizens from private acts of violence, "it may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts."  *Kallstrom*, 136 F.3d at 1066.  This is known as the "state-created-danger theory."  *Id.*

To state a claim under the state-created-danger theory, an individual must allege: "(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a

---

dismiss, ECF No. 7, which was denied as moot on April 6, 2023.  (ECF No. 10).  However, to the extent these exhibits are referenced in Defendant's current motion, the court agrees that they can be considered, as they are matters of public record, are referred to in Plaintiff's complaint, and are "central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (citing *Kallstrom*, 136 F.3d at 1066)).  The key question is "whether [the victim] was safer *before* the state action than [s]he was *after* it."  *Id.* at 493 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 192 (1989)) (emphasis in original).  "It is not sufficient to allege that an official who 'intervene[s]' in a dispute between private individuals is liable for a state-created danger if the plaintiff faced the same 'pre-existing danger' both before and after the official allegedly acted."  *Hardy v. City of Flint*, No. 22-CV-11351, 2023 WL 5014828, at *6 (E.D. Mich. Aug. 7, 2023) (citing *Walker v. Detroit Pub. Sch. Dist.*, 535 F. App'x 461, 466 (6th Cir. 2013)).  Whether a case falls under the state-created-danger theory is "extremely fact dependent" and is determined on a case-by-case basis.  *Reilly v. Ottawa Cnty., Michigan*, No. 20-2220, 2021 WL 3929324, at *4 (6th Cir. Sept. 2, 2021).

      i.    *Direct Injury*

Defendant first argues Plaintiff's state-created-danger claim should be dismissed because "the state-created danger doctrine does not apply where a

state actor directly causes the plaintiff's asserted injury."  (ECF No. 11,

PageID.239) (citing *Rhodes v. Michigan*, 10 F.4th 665, 683-85 (6th Cir. 2021)).

Specifically, Defendant argues that Plaintiff is seeking to hold her accountable for

directly causing her emotional distress.  *Id.*  In *Rhodes*, the plaintiff was seriously

injured after a laundry cart fell on her while she was working as a laundry porter

at a correctional facility.  *Rhodes*, 10 F.4th at 669.  She brought a claim under the

state-created-danger theory alleging that the defendants, who were also working

in the laundry room, took actions that increased the risk the laundry cart would

tip onto her.  *Id.* at 672.  The Sixth Circuit held that "the state created danger

doctrine does not apply where a state actor causes the plaintiff's asserted injury."

*Id.* at 684.  The Sixth Circuit also clarified the "precedential roots" of the state-

created-danger theory, stating that liability is "predicated upon affirmative acts

by the state which either create or increase the risk that an individual will be

exposed to private acts of violence."  *Id.*  In *Rhodes,* the Court concluded that

because the defendants' actions directly harmed plaintiff, rather than exposed

her to a third party's violence, the state-created-danger theory did not apply.  *Id.*

Plaintiff argues that her claims align more closely with the historical roots

of this doctrine, as established in *Kallstrom*, than the facts of *Rhodes.* (ECF No. 13,

PageID.282).  In *Kallstrom*, the plaintiffs were undercover police officers involved

in the investigation of a violent gang.  *Kallstrom*, 136 F.3d at 1059.  During the

gang's criminal trial, the police department released the police officers' personnel

files to defense counsel, which included:

> the officers' addresses and phone numbers; the names, addresses,
> and phone numbers of immediate family members; the names and
> addresses of personal references; the officers' banking institutions
> and corresponding account information, including account balances;
> their social security numbers; responses to questions regarding their
> personal life asked during the course of polygraph examinations; and
> copies of their drivers' licenses, including pictures and home
> addresses.

*Id.*  The plaintiffs brought a claim under the state-created-danger theory after

their files ended up in the hands of the defendants, and the Sixth Circuit agreed

that "the City's actions placed the officers and their family members in 'special

danger' by substantially increasing the likelihood that a private actor would

deprive them of their liberty interest in personal security."  *Id.* at 1067.  The court

agrees that the facts of this case more closely resemble *Kallstrom* than *Rhodes.*

Plaintiff does not allege that Defendant's actions harmed her directly in the same

way as they did in *Rhodes*.  Rather, like in *Kallstrom*, she alleges that Defendant's

actions "created or increased the risk that Plaintiff and her daughter would be

subjected to violence by Sardy," a third party.  (ECF No. 9, PageID.210).

Additionally, Plaintiff is not only seeking damages for emotional distress, as

Defendant claims, but is also seeking medical damages and economic damages associated with counseling and loss of employment, among other things. *Id.*, PageID.209.

       ii.    *Third-Party Action*

Defendant next argues that Plaintiff's state-created-danger claim should be dismissed because "[t]he Sixth Circuit requires third-party action for valid state-created-danger claims," and Plaintiff has not alleged that Sardy ever contacted or harmed her after receiving the relevant information. (ECF No. 14, PageID.287) (citing *Barber v. Overton*, 496 F.3d 449, 455 n.6, 459 (6th Cir. 2007) (Cook, J., concurring); *In re Flint Water Cases*, 384 F. Supp. 3d 802, 862-65 (6th Cir. 2019)). Defendant argues that, while *Kallstrom* allowed a claim to proceed without resulting third-party action, this was "a unique combination of a privacy-right violation and state-created-danger claim that has never been repeated." *Id.* (citing *Barber*, 496 F.3d at 455 n.6, 459). In making this argument, Defendant relies on another case from the Sixth Circuit, *Barber v. Overton*. *Barber* was brought by several corrections officers after their personal information, including social security numbers and birth dates, was released to prisoners held at a maximum-security correctional facility. *Barber*, 496 F.3d at 450. The Sixth Circuit focused on several key differences between the facts of that case and the facts of

*Kallstrom*, noting that *Kallstrom* "did not create a broad right protecting plaintiffs' personal information," it created a "narrowly tailored right, limited to circumstances where the information disclosed was particularly sensitive and the persons to whom it was disclosed were particularly dangerous *vis-à-vis the plaintiffs*." *Id*. at 456.  Because *Barber* only involved the disclosure of the plaintiffs' social security numbers and birth dates, and the plaintiffs' relationship to the prisoners was "not defined by the clear animosity apparent in *Kallstrom*, where the plaintiffs had gone undercover, infiltrated a violent gang, and testified against them at trial," the Court found no constitutional violation.

Again, the court finds that the facts of this case more closely resemble *Kallstrom* than *Barber*.  While *Barber* recognized that the decision in *Kallstrom* was limited, it did not overrule *Kallstrom* or, as Plaintiff claims, add a new requirement that "a private actor actually violated plaintiff's constitutional rights." *Id*. at 456; (ECF No. 11, PageID.254).  Defendant's argument relies on Judge Cook's concurrence in *Barber* which emphasizes that, in every state-created-danger case other than *Kallstrom*, "a private actor actually *violated* the plaintiffs' constitutional rights and the government itself did not." *Barber*, 496 F.3d at 459.  Judge Cook argues "no constitutionally cognizable injury exists in the absence of physical harm to *tie* to the State's action." *Id.* at 460.  However, this

argument does not represent the majority and has not subsequently been adopted by the Sixth Circuit.

Many recent cases in this circuit raising state-created-danger claims have involved allegations that a defendant's failure to act formed the basis of the claim, not a defendant's affirmative acts. *See Reilly*, 2021 WL 3929324 at *5 (arguing that police officers' failure to "take Jeremy into custody, take away his firearm or otherwise fail to 'follow up'" is not sufficient for a state-created-danger claim.); *Franz v. Oxford Cmty Sch. Dist.*, No. 21-CV-12871, 2023 WL 3431223, at *4 (E.D. Mich. May 12, 2023) (failure to search shooter's backpack, failure to discipline shooter, failure to file child abuse reports, and concealment of information were not "affirmative act[s].").  Even in these factually distinguishable cases, however, courts have continued to reiterate that a viable state-created-danger claim requires only "that an affirmative act increased the chance that [plaintiff] would be exposed to an act of violence by [a third party]," not that an act of violence must have already taken place. *See Reilly*, 2021 WL 3929324 at *5. Cases raising state-created-danger claims are often "undeniably tragic," involving a plaintiff who has been harmed or killed by a third party. *See DeShaney*, 489 U.S. at 191.  However, the Sixth Circuit has never directly required this sort of harm to state a claim.

Considering all of the relevant caselaw, the court finds that Plaintiff's

allegations are factually similar enough to *Kallstrom* that she has, at the very

least, pleaded each of the elements to state a claim for state-created-danger,

even in the absence of any allegations that she was subsequently harmed by

Sardy.  Plaintiff has alleged that the disclosed information – her name, phone

number, and state of residence – was particularly sensitive and Sardy was

particularly dangerous given his previous convictions involving Julie Doe and

threats against Plaintiff's life.  *Kallstrom*'s holding "rested on the finding that the

city's disclosure had created a risk that the officers' personal information might

'fall into the hands of persons likely to seek revenge upon the officers' and had

created a 'very real threat' to the officers' and their family members' bodily

integrity and possibly even their lives."  *Lambert v. Hartman*, 517 F.3d 433, 441

(6th Cir. 2008) (citing *Kallstrom*, 136 F.3d at 1063).  Plaintiff's first amended

complaint raises an almost identical concern.  (*See* ECF No. 9).

> iii.    *Requisite Level of Culpability*

Finally, Defendant argues that Plaintiff has "failed to allege sufficient facts

to show Defendant had the requisite level of culpability under a state-created-

danger theory."  (ECF No. 11, PageID.240).  To be sufficiently culpable under a

state-created-danger claim, "[a]n official must be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 933 (6th Cir. 2020). "To draw such an inference, 'a public official must know of more than a <u>general</u> risk of harm…the official must know of the <u>specific</u> risk that later develops." *Franz*, 2023 WL 3431223 at *9 (citing *Jane Doe*, 954 F.3d at 934) (emphasis in original). "Then, '[h]aving drawn the inference, the official must act or fail to act in a manner demonstrating reckless or callous indifference toward the individual's rights…i.e. the official's response must constitute 'callous disregard' or 'conscience shocking behavior.'" *Id.*

First, Plaintiff argues that, given Sardy's history, a "substantial risk of serious harm" existed. (ECF No. 9, PageID.211). Plaintiff claims that she informed Defendant of the relevant facts on a number of occasions, including in both of the relevant phone calls. *Id.*, PageID.208. As such, Plaintiff argues that Defendant was aware of the serious risk that Plaintiff and her daughter would be subjected to violence by Sardy if their information was not kept confidential. *Id.*, PageID.210. While Plaintiff does not detail specific facts proving that Terry did, in fact, draw the required inference, she argues that "[s]ince the risk of violence was so obvious under the above-described circumstances, TERRY knew or should have known that her actions specifically endangered Plaintiff and her minor daughter."

*Id.*, PageID.211.  At the motion to dismiss stage, the court must "draw all reasonable inferences in favor of Plaintiff[] when assessing whether the facts in [her] complaint demonstrate a state-created danger."  *Reilly*, 2021 WL 3929324 at *5 (citing *Lipman v. Budish*, 974 F.3d 726, 745 (6th Cir. 2020)).  Plaintiff's complaint must only "give the defendant a fair notice of what the…claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 545.  Under these standards, Plaintiff's allegations are sufficient to allege that Plaintiff drew the required inference at this stage of the proceedings.

Plaintiff further argues that "notify[ing] a dangerous felon and parolee" of his previous victim's phone number and current state of residence would "shock the conscience of any reasonable person," especially given Sardy's previous threats of violence, convictions for sexual violence against Julie Doe, and the various no-contact orders.  (ECF No. 9, PageID.210).  Based on these allegations, the court agrees that Plaintiff is entitled to proceed to discovery to determine if additional facts support a finding that Defendants' actions rose to the level of "conscience shocking."  *See Franz*, 2023 WL 3431223, at *11 (citing *M.S. by Covington v. Hamilton Cnty. Dep't of Educ.*, 756 F. App'x 510, 517 (6th Cir. 2018) ("There may be 'some cases in which a state actor's actions did not shock the conscience at the motion-to-dismiss stage;' however, 'this is not that case.'")).

Viewing the facts of this case in the light most favorable to Plaintiff, she has sufficiently alleged each required element of a state-created-danger claim: (1) Defendant's affirmative act increased the risk that she would be harmed by Sardy, (2) the existence of a "special danger," given Sardy's history of violence toward Plaintiff and Julie Doe, and (3) that Defendant "knew or should have known that her actions specifically endangered" them.  (ECF No. 9, PageID.210-11).  She has also pleaded sufficient facts to reasonably suggest that she was "safer *before* the state action than [she] was *after* it."  *Lipman*, 974 F.3d at 744 (quoting *Cartwright*, 336 F.3d at 493) (emphasis in original).  As such, Plaintiff's state-created danger claim survives Defendant's motion to dismiss.

> B.  Gross Negligence Claim (Count II)

As an initial matter, Defendant argues that, if Plaintiff's federal claim is dismissed, the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim.  (ECF No. 11, PageID.251).  However, because the court found that Plaintiff sufficiently stated a claim under 42 U.S.C. § 1983 and the state-created-danger theory, the court may also exercise supplemental jurisdiction over her state law claim.  *See* 28 U.S.C. § 1367 ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in

the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution.").

Under Michigan law, tort cases against government officials are controlled

by the Governmental Tort Liability Act (GTLA), Mich. Comp. Laws § 691.1401-

1419.  Mich. Comp. Laws § 691.1407 states, in part, that an officer or employee of

a governmental agency is immune from tort liability unless they act with gross

negligence, which means "conduct so reckless as to demonstrate substantial lack

of concern for whether an injury results."  Mich. Comp. Laws § 691.1407(8)(a).

This section does not create an independent "gross negligence" cause of action,

but instead only governs "the degree of negligence that may expose a

governmental officer or employee to liability."  *Rogan v. Budzynowsi*, No. CV 19-

13477, 2022 WL 4703300, at *5 (E.D. Mich. Sept. 30, 2022) (citing *Cummings v.*

*Robinson Twp.*, 283 Mich. App. 677, 692 2009)).  "Accordingly, a plaintiff must

plead and prove that the defendant at issue committed an underlying tortious act

in a grossly negligent manner."  *Id.* (citing *Beaudrie v. Henderson*, 465 Mich. 124,

139 (2002)).

While Plaintiff's complaint raises this as a claim for "gross negligence," the

court will treat it as one for ordinary negligence.  *See in re Flint Water Cases*, 384

F. Supp. 3d at 872 ("although plaintiffs style their proposed claim as one of gross

negligence, the Court must treat it as one of ordinary negligence.").  To establish a prima facie case of negligence under Michigan law, a plaintiff must meet the following elements: "(1) the defendant owed plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages."  Plaintiff's claim alleges that Defendant "was under a duty not to act with reckless disregard for the safety of foreseeable individuals, including Plaintiff and her minor daughter," Defendant "breached her duty by contacting Sardy and providing him with Plaintiff's name and telephone number," and this conduct "constitutes gross negligence," which was "the proximate cause of Plaintiff and her minor daughter's injuries and damages." (ECF No. 9, PageID.212).  Defendant argues Plaintiff's claim fails to allege facts sufficient to show gross negligence, proximate cause, and that she suffered a requisite injury.  (ECF No. 11, PageID.249).

       *i.*    *Gross Negligence*

Under the GTLA, gross negligence "suggests...almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Reyes v. Monroe Cnty.*, 572 F. Supp. 3d 401, 411 (E.D. Mich. 2021) (citing *Tarlea v. Crabtree*, 263 Mich. App. 80 (2004)).  Courts in this district have recently held that "Michigan's gross negligence standard is similar enough to

the deliberate indifference standard" utilized in the state-created-danger theory that the court can utilize the same test. *Id.* Because the facts underlying her two claims are the same, and the court found that Plaintiff has alleged enough facts at this stage to show Defendant was deliberately indifferent as part of her state-created-danger claim, Plaintiff has also alleged sufficient facts to show gross negligence as part of her state law claim.

ii.   *Proximate Cause*

Defendant next argues that Plaintiff has failed to sufficiently allege proximate cause because she has failed to address the standard set forth in *Ray v. Swager*, 501 Mich. 52 (2017). (ECF No. 11, PageID.249); *see also in re Flint Water Cases*, 384 F. Supp. at 853 ("Plaintiffs do not address *Ray*'s causation requirement" which is "a case this court is bound to follow."). Under the GTLA, Defendant is immune from tort liability unless her gross negligence was the proximate cause of Plaintiff's injury. *Robinson v. City of Detroit*, 462 Mich. 439, 462 (2000). Pursuant to *Ray*, the court must consider "whether the accident was a foreseeable consequence of an individual's actions," and whether such conduct was "the one most immediate, efficient, and direct cause" of plaintiffs' injuries. *In re Flint Water Cases*, 384 F. Supp. at 853. Plaintiff's complaint alleges the following injuries relevant to her state law claim: "unreimbursed medical

damages; significant and debilitating emotional distress and anxiety; physical

manifestations of emotional distress, including but not limited to, extreme

nervousness, sleeplessness, irritability and crying, headaches, and other

symptoms; economic damages associated with counseling and loss of

employment; and other damages unknown at the present time." (ECF No. 9,

PageID.209). She claims "[Defendant's] gross negligence was the proximate cause

of Plaintiff and her minor daughter's injuries and damages." *Id.*, PageID.212.

While Defendant points to *in re Flint Water Cases* as requiring Plaintiff to

address the *Ray* standard to survive a motion to dismiss, that case involved a

theory of proximate causation that was much more attenuated than the one

involved here. *In re Flint Water Cases* involved a number of plaintiffs who sought

to amend their complaint to add gross negligence claims against low-level

government employees. *In re Flint Water Cases*, 384 F. Supp. 3d at 853. The Sixth

Circuit held that these claims would not survive a motion to dismiss because

"[t]he sheer size and scale of the Flint Water Crisis makes it difficult for plaintiffs –

or anyone – to identify any defendant most legally responsible for the resulting

injuries." *Id.* While the court must still engage in a proximate cause analysis at

the motion to dismiss stage, cases are often dismissed because the alleged harms

are completely distinct from the defendants' actions or there were other

individuals who intervened and may have caused the injuries.  *See City of Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496, 504 (6th Cir. 2010) ("here, the cause of the alleged harms is a set of actions (neglect of property, starting fires, looting, and dealing drugs) that is completely distinct from the asserted misconduct."); *Rogers v. City of Port Huron*, 833 F. Supp. 1212, 1224-25 (E.D. Mich. 1993) ("There was simply no connection between the Offers' conduct and Decedents' injuries...[which] were either caused by a private citizen, or were self-inflicted.").  This is not the case, here.  Plaintiff's injuries, including medical damages, emotional distress, and economic damages associated with counseling and loss of employment, were allegedly caused by Defendant's actions revealing her identity and contact information to a prior abuser.  Without an opportunity for full discovery, these allegations at least suggest Defendant's conduct was "the one most immediate, efficient, and direct cause" preceding Plaintiff's injuries. *See Krawczyk v. Twp. of Hagar*, 673 F. App'x 508, 513 (6th Cir. 2016) ("whether Krawczyk clears Michigan's high causal bar is an issue of fact currently disputed by the parties and deserving of at least some discovery"); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 619 (6th Cir. 2004) ("Given the unadorned allegations in the complaint, given the requirement that we must assume plaintiffs will be able to prove them and given the absence of any discovery" the Court held that the

plaintiffs had sufficiently alleged proximate cause to survive a motion to dismiss). Further, consistent with Plaintiff's allegations, it was reasonably foreseeable that Defendant's conduct "contacting Sardy and providing him with Plaintiff's name and telephone number" would result in the alleged harm. *See Ray*, 501 Mich. at 65 ("the court must also assess proximate cause...which requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim."). Likewise, she has stated enough to show proximate cause at this stage of the proceedings.

> iii. *Injury*

Finally, Defendant argues that Plaintiff's alleged emotional injuries are insufficient to bring a claim under Michigan law. (ECF No. 11, PageID.249). However, Plaintiff has alleged more than speculative injuries or emotional damages, she has alleged "unreimbursed medical damages" and "economic damages associated with counseling and loss of employment." (ECF No. 9, PageID.209). These alleged injuries are sufficient at the motion to dismiss stage.

Even taking into consideration all of Defendant's arguments, Plaintiff has pleaded sufficient facts to meet each element of a negligence claim. Likewise, her state law "gross negligence" claim also survives Defendant's motion to dismiss.

C.    Qualified Immunity

Finally, Defendant argues that Plaintiff's claims should be dismissed

because Defendant is entitled to qualified immunity.  (ECF No. 11, PageID.252).

Qualified immunity is "an affirmative defense shielding governmental officials

from liability so long as their conduct does 'not violate clearly established

statutory or constitutional rights of which a reasonable person would have

known.'" *Cartwright*, 336 F.3d at 490-91 (citing *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)).  A plaintiff has the burden of establishing that a defendant is not

entitled to qualified immunity.  *Id.* (citing *Rich v. City of Mayfield Hts.*, 955 F.2d

1092, 1095 (6th Cir. 1992)).  Defendant's qualified immunity arguments generally

overlap with the merits of Plaintiff's claim, including that "it is not clearly

established that a state actor directly causing emotional harm creates a valid

state-create danger claim or a valid claim under Michigan law."  *Id.*  With respect

to Plaintiff's state-created-danger claim, this argument fails for the reasons

discussed above.  *See Lipman*, 974 F.3d at 749.

Defendant also argues that she could not have violated clearly established

law because "[a] reasonable person would not have known that inadvertently

providing a name, telephone number, and state of residence to a parolee would

violate clearly established statutory or constitutional rights of the mother of a

victim." (ECF No. 11, PageID.255). Recently, the Sixth Circuit addressed a similar claim and found that the alleged violation of the state-created danger doctrine was clearly established. *Lipman*, 974 F.3d at 749. In *Lipman*, the Sixth Circuit held that their holding in *Kallstrom* "clearly established that the state may not affirmatively act in a way that creates or increases a risk of private violence, provided that the state actor had the requisite mental culpability." *Id.*; *see also Nelson*, 845 F.3d at 700-03. Comparing the facts of *Kallstrom* with the facts of this case affirms that the law was clearly established. Both cases involve a claim under the state-created-danger theory; both cases involve an individual who disclosed the plaintiff's private information, including their name and phone number; in both cases, the third party who received the disclosure had some relationship to the plaintiff that raised a serious fear of retaliation; and, in both cases, the plaintiff alleges that the defendant was aware of these serious safety concerns. As such, consistent with the Sixth Circuit's finding and this court's determination that Plaintiff has sufficiently stated a claim under the state-created-danger theory, Defendant is not entitled to qualified immunity. *See id.* at 750 ("But the right to be free from such state-created danger was clearly established at the time of Defendant's actions. Accordingly, their assertion of qualified immunity must fail.").

## IV.    CONCLUSION

At this stage, Plaintiff has pleaded enough to state a claim under the state-created-danger theory and for gross negligence under Michigan law.  Additionally, because the law was clearly established at the time of Defendant's actions, Defendant is not entitled to qualified immunity.  As such, Defendant's motion to dismiss is **DENIED.**

**SO ORDERED**.

Date: November 28, 2023          s/F. Kay Behm
                                 F. Kay Behm
                                 United States District Judge